The next case is People v. Vinson, No. 516-0124. Good morning, Counsel. Good morning. May it please the Court, Counsel. My name is Jennifer Lacksey, and I represent the defendant appellant, Mr. Terrence Vinson. Due to time constraints, I would like to focus on the first. I'm sorry. I was just going to make an objection where I know if there is a motion to cite additional authority. Yes, Your Honor. That has been filed, and that has been filed unstatement. The Court will certainly take this motion with the case. Any objection? No, I have no objection, and I would like to address that in argument, too. Okay. Very good. You may proceed. Thank you. Thank you. And due to time constraints, I would like to focus on the first two arguments, the ineffective assistance of counsel and then the Krinkle argument in No. 2. Mr. Vinson was deprived of his constitutional right to effective assistance of counsel, and counsel's errors permeated the trial and denied him his right to a fair trial. The most egregious errors here were trial counsel's failure to object to Detective Weisenberger's testimony regarding cell phone data. First, Detective Weisenberger lacked the foundation to provide this testimony. There was no evidence that he had the skills or expertise to assess whatever reports he received from Verizon regarding the cell phone data, and trial counsel never challenged this. Next, the cell phone records were inadmissible hearsay. When a police officer relies on a phone company's report with data showing where a phone pinged and at what time it did so, this is hearsay when it is relayed to the jury for its truth, and that's what happened here. This exact issue was addressed in People v. Robbers cited in the briefs. In that case, a detective testified about how cell phones ping off of certain towers and indicate that a phone is nearby those towers, and the detective testified that the phone records showed that two attackers followed a victim before robbing him. The appellate court held that this was inadmissible and prejudicial hearsay. The court explained that information that is hearsay when presented as numerals in a spreadsheet is still hearsay when it's conveyed to a jury. Even though an eyewitness identified Ramos as one of the robbers attacking the victim, the appellate court found that the improper hearsay testimony required reversal. Here, Detective Weisenberger testified that Mr. Vinson's cell phone data placed him at or near the scene of the crime just before it was committed and, again, 10 minutes before the 911 phone call came in. And, again, there was no objection by trial counsel. So though the state claims that Weisenberger's testimony could have been interpreted as conveying that Mr. Vinson's home was near the Heron's trailer park on Gold Drive, Detective Weisenberger seemed to distinguish between the two trailer parks when talking about Mr. Vinson's phone and which location it was nearby. And this was undeniably prejudicial evidence. At no point in the state's brief does it argue that Weisenberger's testimony was proper. The state does not contest the argument that Weisenberger's testimony was hearsay or that it lacked a foundation. Instead, the state focuses on whether Mr. Vinson was prejudiced by counsel's failure to object. In order for a defendant to establish that he was prejudiced by counsel's mistakes, he is not required to show that the verdict would have been different. Rather, the question is whether he received a fair trial with a verdict worthy of confidence. Here, trial counsel's errors were prejudicial, because while the evidence was overwhelming against Elijah Mosley, it was not against Mr. Vinson. So first, the evidence tying Mr. Vinson to the scene other than the cell phone data was Elijah Mosley's alleged accomplice's testimony. And Mosley's testimony was contradicted in major ways by unbiased witnesses. First, Mosley testified that he met up with Sanford and Vinson around 11 p.m. However, one of the detectives testified that Sanford and Mr. Vinson actually met up at 11.50, nearly an hour later than what Mosley claimed. Other instances are the Kleitz and Simpson testified that all the intruders had guns. However, Elijah Mosley said only Mr. Vinson had a gun. The victims in the case testified that the man with the red mask on his face held a gun to their son's head. Elijah Mosley admitted that he was the person wearing the red mask, and in fact that his DNA was found on that red shirt that was tied in the backseat. However, Mosley testified that it was Mr. Vinson who held a gun to the child's head. Francine Simpson, who was in the trailer during the time of the home invasion, testified that the man wearing the red mask pointed a gun at her face. However, again, Mosley insisted he did not have a gun. Other reasons his testimony was questionable, Elijah Mosley claimed that Mr. Vinson had done research and that it was his plan to rob the Kleitz because he knew Kleitz sold weed and that he had the best, or something along those lines. However, Mosley was the one who knew Kleitz sold weed and had just purchased from him four days before, and both Mosley and Larry Kleitz confirmed this. Other instances, Elijah Mosley got a plea deal for seven years in exchange for his testimony implicating Mr. Vinson, and he admitted that he might only serve four to six months if he were able to go to boot camp. Other instances, Elijah Mosley was in the backseat, and that is where all of the stolen evidence was located, was where Elijah Mosley was sitting. Even though all the intruders were alleged to have guns and masks, only Elijah Mosley had the tied shirt that was used as a mask found nearby, and there were no guns found in the vehicle. And even though Larry Kleitz said that five to seven hundred dollars had been taken to him during the robbery, there was also no money found in the vehicle. So, I mean, the fact heard all this, right? Yes, Your Honor, but they also... So, Mosley clearly was involved in this crime, in this home invasion, and Mosley's testimony where he shifted most of the blame... In Mosley's testimony, he shifted most of the blame to Mr. Vinson and tied Mr. Vinson into committing this crime. There were no incriminating statements from Mr. Vinson saying that he did commit this crime. Instead, he admitted to getting in the car with his brother and going to a different trailer and then getting on the road again. So, there was no confession from him. And the things tying him to this crime were Mosley's questionable testimony, where he's clearly contradicted multiple times by a detective and the victims, and this very damaging cell phone testimony that never should have come in. So, the jury had this damaging cell phone testimony from Detective Weisenberger that lacked a foundation because we have no evidence that this officer was qualified to review these Verizon reports or to interpret them. He testified about how cell phone towers work, and there was no foundation for how he was able to do this, how he had any expertise or skills, you know, to interpret these phone records. The cell phone records, they purportedly show that the defendant was in the location where the crime took place, right? So, you can talk about some other evidence, disputed evidence, but all the other evidence you talk about doesn't, as I recall, doesn't address where the defendant was located. And that's what the – I mean, how does the cell phone records – I mean, is there a dispute about – let's put the – set aside the cell phone records. Is there a dispute that the defendant was with Mosley and perhaps another person when the crime took place? So – and that's an issue that is somewhat addressed in argument, too. Mr. Vinson did claim that he had an alibi witness that he wanted called, that trial counsel failed to call. So, whether that alibi witness was someone at the other trailer park where he did admit to going, the trailer park that was nearby on Gold Drive, we don't know because we don't have enough information in the record to address that claim. So, maybe it would be helpful to address the Krenkel argument and argument, too. So, Mr. Vinson complained that his trial counsel did not call an alibi witness that he wanted called. He did get new post-trial counsel appointed, which would normally, you know, cure that error, and then that attorney can address how counsel failed. But what that attorney did, what post-trial counsel did, is he failed to flesh out the record because he told the court, we don't know what Mr. Vinson's witnesses would have said because trial counsel didn't call them. And that was his argument to the court. And so, Krenkel was again triggered when Mr. Vinson complained about that attorney's performance. May I finish that thought? You may finish that thought. Okay. So, the Krenkel inquiry was triggered when he first complained about his first trial attorney and that attorney's failure to call witnesses. However, it was again triggered when he complained about post-trial counsel's failure to listen to him regarding what he was trying to tell that attorney about those witnesses. And I can address that again in the rebuttal. Thank you. May I please have the Court? Counsel. Jennifer Camden on behalf of the people. With regards to the first issue on the cell phone tower evidence, the defendant hasn't shown that counsel was ineffective for not objecting to this evidence because he hasn't shown prejudice under Strickland. And there are three main reasons for this, the first being the strength of the other evidence against him, the second being the fact that the officer did not overstate the limited probative value of this evidence, and the third is the fact that the challenged evidence was consistent not only with the defendant's guilt but also with the defendant's story about his whereabouts on that night. With regard to the strength of the evidence, the evidence was that no one else could have committed this crime but the defendant, Sanford, and Mosley. And this is discussed in the people's answer brief, and I'll rely on the brief for that argument except to point out that in the defendant's reply brief, where he states at page 7 that the evidence didn't preclude the possibility that Mosley had left the company of defendant and Sanford to commit the home invasion with others before returning to the Heron home, my response is that the statement of the defendant to police, the admission of which is not questioned in this case, itself precluded that possibility, and that's because, and I believe this is responsive to your question, Your Honor, the defendant told the police that he met up with Sanford and Mosley at his mother's house, and the evidence was that this occurred at about 11.50 p.m., and that the three went to Heron's. The three were then pulled over by police about an hour after the 911 call occurred. The defendant told the police that no one was picked up or dropped off from the car during that time and that it was just the three of them in the car all night, and the defendant, when asked, had no explanation for the presence of the phones in the car. So if Mosley had, as suggested, left the company of defendant and Sanford, the defendant would have said so and would have offered that as an explanation for the presence of the phones, which were, again, reported stolen less than an hour before they were found in the car in which these three men were traveling. With regard to the limited probative value of the evidence, I want to point out that the defendant repeatedly in the reply brief, and again today, states that the evidence was that the cell phone of the defendant was, quote, at or near the victim's trailer park or in the trailer park or at the crime scene. This was not the evidence. At pages 820 and 821 of the record, the state asks the witness, does your report say that the defendant's phone was, quote, at or near the victim's trailer park? And while the witness initially agreed with that characterization of his report, then he said that that answer was incorrect. He received leave to refresh his recollection by looking at his report. He looked at his report, and he testified that the defendant's phone was near the victim's trailer park at that particular time. He went on to say that it was in an area near the trailer park, it was in an area northeast of the trailer park, the approximate area of Heron's trailer park, and that it stayed in an area around that trailer park. And so the officer never purported to pinpoint the location of the defendant's phone at any time. Furthermore, the witness went on to say that so what does he mean by near? Well, he said that all of the locations that he identified could have been within half a mile of the specific locations that he identified. But, again, he never identified any specific location. So taken together, what we have is that the phone could have been within half a mile of these near or approximate locations that he identified. It was hedging upon hedging. And the defendant, so the witness could only say that the defendant was, that the phone was anywhere within half a mile of these locations and within half a mile of the cell phone tower, which was at the corner of Pleasant Hill Road and Wall Street. And the map admitted into evidence shows that Heron's home was very near that tower. So the witness's testimony was consistent with the defendant's phone being at or near Heron's home, both before and after the 911 call, because her home was near that cell tower. In other words, the defendant's statement to police that he visited Heron's home that night provided an alternative explanation for his presence of the phone in that area. And that's what distinguishes this case from the Ramos case cited by the defendant, in which the officer testified that the data allowed him to pinpoint the, quote, exact geographic location of the phone. That's among the factual distinctions between the two cases, and the rest of them are discussed in the People's Answer Brief. And I also want to point out that the reasons I've discussed here today is why this case is like the Heron case discussed in the People's Brief, in which the admission of cell tower data was ruled to be not prejudicial because the data was consistent with both the defendant's guilt, but also with his presence at his own home, which was very near the crime scene. So for these reasons, the admission of this evidence wasn't prejudicial, and the defendant hasn't shown ineffective assistance of counsel. I'd like to address the Krenkel argument. The defendant raises a number of places in the record where he says that the court's Krenkel duty was triggered. The State's argument is multipart, but first, there was no procedural error under Krenkel or under some unnamed Krenkel-adjacent duty. Second, any procedural error was harmless. And third, the defendant has failed to show that the court's denial of his claim of ineffective assistance of trial counsel was manifest error. The defendant, when he raised his initial pro se post-trial claim of ineffective assistance of counsel, based on this dispute about witnesses, the trial court immediately granted trial counsel's motion to withdraw as counsel based on a breakdown of communication and gave the defendant new post-trial counsel. So the defendant at that point received all the relief to which he was entitled. The defendant's real complaint is that then after the court heard and denied the defendant's post-trial motion and the defendant then raised a complaint about both the performance of trial counsel and post-trial counsel pro se before he gave his statement in allocution at sentencing when given relief to address the court, he began by raising these complaints. So the defendant's argument is that some sort of new Krenkel-adjacent duty arises when a defendant raises a pro se claim about the performance of post-trial Krenkel counsel, so essentially Krenkel within Krenkel, and the defendant takes no authority for this. This is a new remedy that the defendant is asking for. He's asking for this court to create a new edifice of procedures in such circumstances. I note that the defendant, although he notes that post-trial counsel is required to provide effective assistance, the defendant isn't arguing ineffective assistance of post-trial counsel, probably because he can't show prejudice. The defendant is claiming that the court committed an error. And although the Krenkel inquiry was created to ensure effective assistance of trial counsel and it can test claims regarding that, but there's no authority for the proposition that this, that Krenkel and his progeny should be extended in that regard. So the State's argument is that the defendant hasn't shown that the court failed in any way in any duty that arose at that time in the statement in elocution because no duty arose. And I do point out that even if some sort of Krenkel-like duty arose at that time, the court, assuming that the entire edifice of Krenkel would just be important wholesale, would have been justified in evaluating that claim based on the court's knowledge of trial counsel's performance and the facial insufficiency of the allegations on their face. In other words, the third type of inquiry permitted, and that's because the – even though the record doesn't reveal what the precise identities of the alibi witnesses or exactly where they would have said that the defendant was, either they would have said that he was at Heron's home or they would have said that he was somewhere else. If he was at Heron's home, then the evidence would have been cumulative and the – there wouldn't have been prejudice and counsel would have been within the trial strategy not to call those witnesses. If the witnesses would have said that the defendant was anywhere else other than Heron's home, then those witnesses would have contradicted the defendant's own statement to police and would have shown him to have lied to the police, which of course goes to consciousness of guilt, et cetera. So for those reasons and the reasons stated in the People's Answer Brief, this Court should affirm the defendant's conviction and provide the sentencing relief discussed in the briefs. Thank you. Your Honors, first I would like to address the State's supplemental – or the State's motions by additional authority regarding Custer and how that applies to the Crankle argument and argument 2. So I did not cite Custer in the opening brief but did cite it in the reply, and I thank the State for bringing that to the Court's attention that the Supreme Court's decision came out after the reply. There is still ample authority justifying a remand for a Crankle inquiry as stated in the opening brief, and that does not rely on Custer. Custer was a case where the Third District Appellate Court found that a Crankle-like inquiry should apply in a post-conviction case. This is a direct appeal, so Custer does not preclude this being remanded for a Crankle inquiry into post-trial counsel and the complaints regarding counsel. Next, I want to address the State's claim that this is a Crankle adjacent duty that we are arguing for, and it's not. This is simply a Crankle inquiry. Mr. Vinson complained about trial counsel's failure to call witnesses, and he again complained – he made the same complaint regarding post-trial counsel's argument, saying the reason trial counsel and post-trial counsel are ineffective here is because neither one has listened to me about these witnesses that I'm talking about. Counsel, this all arose during the state of allocution. Is that correct? He initially complained about trial counsel, I think, pre-trial, and it was about witnesses, and it seemed to be resolved, and then after trial he again complained post-trial before sentencing about trial counsel and got the new post-trial attorney appointed. But his complaint remained the same about the failure to call witnesses throughout, and because of the record that we have, we don't know who those witnesses were, what they would have said, or why counsel failed to call them. So the record isn't sufficient, and that's why it needs to be remanded for an inquiry into that complaint. The whole purpose of a Crankle inquiry was thwarted here because the evidence is not definitive. I don't think that is accurate. One, that's speculating, but also if the witnesses would have testified at Heron's home, we don't know what the witnesses would have testified to because there was no explanation about why they were called and exactly what their alibi testimony would have been. However, had their alibi testimony had been something along the lines of Mr. Vincent was at the home and remained there until they left and right before they got pulled over, I mean, that would be practically completely exonerating, and it would support the idea that Moseley committed this crime with others. So while the men may have gotten together at some point in the night and went to Heron's home, we don't know what that alibi testimony would have been and if it would have placed him somewhere other than near this trailer park at the time of the crime. And the record is insufficient for us to know what that testimony would have been or how it would have impacted his case. And that's why this should be remanded for a Crankle inquiry. While the State argues regarding the first argument about ineffective assistance, that the officer didn't overstate the strength of the evidence regarding the cell phone data, he did say that the phone was at or near the trailer park. And I think he corrected course from that statement. I think he elaborated on that statement. And he said that it was near the trailer park, the Kleitz trailer park, at different times. And he also clarified that his data was accurate to within half of a mile of what he was saying. So I think he did overstate the strength of the evidence. Not only did he give this evidence that he didn't have skills or expertise to give, but he also said basically that it was accurate up to half a mile. And I think that's pretty damaging testimony. And it never should have come in when there was a foundation objection and a hearsay objection that could have kept it out. So I do think that that evidence was prejudicial in this case, considering that the evidence that was tying Mr. Vinson to the home invasion was Elijah Mosley's very questionable testimony that was contradicted in major ways by unbiased witnesses. As a final note, I just wanted to address sentencing. The state and I both agree that an extended term sentence should not have been imposed. That's argument three. However, we are requesting different remedies. The state has requested that this court reduce the sentence to the maximum non-extended term, whereas we have requested that this court remand for a new sentencing. And however, the state does concede that that is also an option. And I think that's all I have unless Your Honors have questions. All right. Thank you, counsel, for your arguments. The court will take this matter under advisement on the motion. We have mentioned that one. We'll take that as the case. Anything else? Yeah, sure. We're letting that come in. We'll grant the motion. We're going to grant the motion. So we'll take a brief break.